**CITY OF DAYTON, Appellee,**

**v.**

**DUNNIGAN, Appellant.**

[Cite as *Dayton v. Dunnigan* (1995), 103 Ohio App.3d 67.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14827.

Decided May 10, 1995.

*Edward B. Neuman,* Assistant City Prosecutor, for appellee.

*Timothy Young,* Assistant Public Defender, for appellant.

FREDERICK N. YOUNG, Judge.

Matthew Dunnigan appeals from his conviction by the Dayton Municipal Court, following a bench trial, of three counts of aggravated menacing, a misdemeanor of the first degree, in violation of R.C. 2903.21, which provides: "(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person or member of his immediate family."

Dunnigan was sentenced to eighteen months' incarceration with a fine of $3,000 and costs, but the court suspended the imprisonment except for the twenty days he had already served and gave him credit for that time. The court also suspended the imposition of the fine and court costs "on condition [there are] no future violations of any type for one year," including no further picketing by him at the scene of his violations, which was the Dayton Abortion Clinic located at 1829 N. Main Street, Dayton, Ohio, and that he have no contact "of any kind with any of the workers at that location." He was placed on unsupervised probation for one year.

Dunnigan was a regular picketer on every Wednesday and Friday at the Dayton Abortion Clinic for the past two years, where he vocally and apparently loudly protested the performance of abortions and did his best to dissuade women, albeit peacefully, from entering the clinic. On the day in question, August 3, 1994, three of the clinic's female employees, including its director, were taking a break sometime between 11:00 a.m. and 1:00 p.m. outside the clinic, apparently for a smoke, when Dunnigan, who was approximately forty feet away, asked them in a loud tone if their uniforms "were bullet-proof" and that "judgment had come to the people down at Pensacola and it would be coming here." All three of the employees knew that only a few days earlier three people had been shot at the Pensacola abortion clinic and two of them, including a doctor, had been killed. All three women testified that they took Dunnigan's statement seriously and felt threatened with physical harm. One of the employees stated that "I did turn to him and said, is that a threat[?] And he said, yes. You can take it anyway you want to." The women went back inside the clinic and the director immediately called the police. Dunnigan was charged the following day with three counts of aggravated menacing, and one count of disorderly conduct in violation of Dayton City Ordinance 137.01(A)(4).

A trial to the court was held on August 14, 1994. The disorderly conduct charge was dismissed by the judge at the close of the prosecution's case by granting Dunnigan's Crim.R. 29 motion, but Dunnigan's Crim.R. 29 motion to dismiss the aggravated menacing charges was overruled and he was convicted by the court of those charges. The court rendered its judgment as follows:

"Based on the testimony the Court has heard this morning, the Court finds first of all the ability to immediately carry out the threats is not an element of the offense. There is no need to think imminent harm is coming albeit one of the witnesses said sometime later. The fact is heretofore all three workers are acquainted with Mr. Dunnigan who makes every Wednesday, Friday, as he calls them all kill days. And because of the workers in Florida and everybody was wearing smocks and because on this particular day the statements he made were statements that had not been made heretofore, in an attempt as Mr. Dunnigan said to bring an awareness of death, I think it did exactly that and by bringing that awareness of death, the witnesses felt threatened. Therefore, the Court will enter guilty findings on all three offenses."

Dunnigan appeals bringing to this court the following three assignments of error:

"First Assignment of Error

"The trial court erred in failing to grant the defendant's motion for acquittal pursuant to Rule 29 which required the trial court [*sic*] find O.R.C. 2903.21 unconstitutional as applied to the facts of this case as all conduct and speech alleged to be criminal conduct were protected by the First Amendment to the United States Constitution and the Ohio Constitution.

"Second Assignment of Error

"The trial court erred in convicting the defendant as the First Amendment requires an additional element to be proved which is that the speech in question was likely to incite an immediate breach of peace, and no proof was offered on this additional element.

"Third Assignment of Error

"The trial court erred in convicting the defendant on two of the counts of aggravated menacing as said convictions were against the manifest weight of the evidence."

■ The first two assignments of error raise essentially the same issues and will be discussed together. Dunnigan argues that the application of the aggravated menacing statute to his case is unconstitutional because his statements did not constitute "fighting words" and therefore they were protected by the First Amendment, which guarantees freedom of speech. Dunnigan also argues here that he was not immediately capable of shooting and so there was no reasonable threat of retaliatory violence, which, if it had existed, would bar his speech from the protection of the First Amendment.

■ All three of the authorities cited by Dunnigan in support of his arguments here, however, are disorderly conduct cases and have no bearing on

the case at hand, which is a "threat" case. The prosecution in its brief properly points out that the fighting words exception to the First Amendment falls within the disorderly conduct arena and has no relevancy in an aggravated menacing situation. The crime of aggravated menacing is triggered by a threat which intimidates or causes fear or apprehension by the recipient. *State v. Schwartz* (1991), 77 Ohio App.3d 484, 602 N.E.2d 671. Such threats are not among the class of utterances which are protected by the First Amendment. *Mozzochi v. Borden* (C.A.2, 1992), 959 F.2d 1174; *United States v. Khorrami* (C.A.7, 1990), 895 F.2d 1186; *United States v. Bellrichard* (C.A.8, 1993), 994 F.2d 1318; *United States v. Lee* (C.A.8, 1991), 935 F.2d 952.

It makes no difference, furthermore, that Dunnigan was exercising his constitutionally protected right to protest abortions at the time he made the threats. *United States v. Bellrichard, supra; United States v. Kelner* (C.A.2, 1976), 534 F.2d 1020.

■ Finally, as the trial court noted, it is not an element of the offense that the offender intends to carry out his threat or that he is even able to carry it out. *State v. Schwartz, supra; United States v. Velasquez* (C.A.7, 1985), 772 F.2d 1348, 1357.

In summary, Dunnigan's reliance on disorderly conduct case law is ill-conceived and has no bearing on the elements of the crime of aggravated menacing, of which he was charged and convicted. The first two assignments of error are overruled.

■ In his third assignment of error, Dunnigan maintains that as to at least two of the three female employees who complained of his conduct, his convictions were against the manifest weight of the evidence. Dunnigan argues here that since two of the women who heard his remarks did not immediately flee into the clinic they could not have held a reasonable belief of serious physical harm and therefore he should not have been convicted of the aggravated menacing charges as to these two employees. Dunnigan cites *State v. Striley* (1985), 21 Ohio App.3d 300, 21 OBR 447, 488 N.E.2d 499, in support of his position.

■ Whether a threat sufficient to support a charge of aggravated menacing has been made is a question of fact and one to be determined by the trier of fact. *United States v. Bellrichard, supra; Martin v. United States* (C.A.8, 1982), 691 F.2d 1235. The relevant inquiry to be made by a reviewing court is whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–574. This is a particularly

important standard of review when the judgment by the trier of fact is necessarily founded in large part on the credibility of the witnesses. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742, 745; *State v. Evans* (1993), 67 Ohio St.3d 405, 410–411, 618 N.E.2d 162, 167–168. An appellate court abuses its discretion when it substitutes its judgment for that of the trier of fact as to the credibility of witnesses. *State v. Walker* (1978), 55 Ohio St.2d 208, 9 O.O.3d 152, 378 N.E.2d 1049.

There is certainly sufficient credible evidence in the record to support the finding of the trial court that the witnesses, including the two which Dunnigan discusses in his third assignment of error, felt seriously threatened with physical harm. The *Striley* case cited by Dunnigan concerned a charge of aggravated menacing filed against a person who stated to another "tell your mother to lay off." The receiver of that remark did not even testify that he interpreted it as a threat and the appellate court found that reasonable minds could not find the statement to be a threat of physical harm, serious or otherwise. *Striley, supra,* 21 Ohio App.3d at 302, 21 OBR at 449, 488 N.E.2d at 502.

In the case *sub judice,* Dunnigan himself admitted on the witness stand that he had made the remarks about bullet-proof uniforms in conjunction with references to the victims of the recent shooting at an abortion clinic in Pensacola, and stated, "And then I said, don't bother praying for the poor bastards in Florida because their souls are in hell. Don't waste your breath. And then I believe I may have said judgment had come to them in Florida." He also added that he felt the victims in Florida "deserved to die," and that he was trying to remind the witnesses that they could be shot also. The statutory requirement that Dunnigan "knowingly" induced the apprehension of harm testified to by the three witnesses could certainly be found from this testimony of Dunnigan himself.

Based not only upon the statements of the witnesses but also upon Dunnigan's own admissions under oath, the trial court certainly had before it sufficient credible evidence to support Dunnigan's convictions on three counts of aggravated menacing. The third assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

BROGAN and GRADY, JJ., concur.