OPINION
{¶ 1} This case arose out of juvenile delinquency complaint against Samantha Cunningham ("Appellant"), d.o.b. October 21, 1985, filed in the Harrison County Court of Common Pleas, Juvenile Division, on May 23, 2000. The complaint charged Appellant with three counts of aggravated menacing, stemming from two letters that were discovered at her junior high school.
 {¶ 2} On June 16, 2000, Appellant filed a Motion to Suppress. Appellant sought to suppress all statements she made on May 18, 2000, at a meeting with the school principal, Mr. Mowery, and with Lieutenant John McMillan ("Lt. McMillan") of the Harrison County Sheriff's Department. A hearing on the motion to suppress was held on August 7, 2000. The motion was denied by journal entry on October 17, 2000.
 {¶ 3} The adjudicatory hearing took place on October 25, 2000. Appellee submitted one exhibit as evidence, which was a letter ("Letter No. 1") purportedly written by Appellant on or about May 11, 2000. Letter No. 1 contained references to Mr. Mowery and to two teachers at the school, Nancy Custer and Janet Bogus. Another letter ("Letter No. 2") was also found at the school a few days later. Letter No. 2 was not introduced at trial, but testimony about the letter indicated that it contained death threats directed at various teachers and referred to knives, guns, bombs, and the Columbine High School murders. (10/25/00 Tr., p. 65.) There was very little discussion about Letter No. 2 at trial, and Appellee's theory of the case appeared to be that Appellant committed aggravated menacing in authoring and distributing Letter No. 1.
 {¶ 4} The adjudicatory hearing concluded on January 10, 2001.
 {¶ 5} A dispositional hearing was held on January 17, 2001. On February 7, 2001, the trial judge ordered Appellant to be detained for ninety days at the Sargus Juvenile Detention Center ("Sargus"). The court also ordered Appellant's mother, Tresa Cunningham, to attend parenting classes. Appellant appealed the dispositional order to this Court. This Court granted a stay of execution of Appellant's detention.
 {¶ 6} On December 12, 2001, this Court vacated the February 7, 2001, decision of the juvenile court because there was no record that Appellant had ever been adjudicated a delinquent. In re Cunningham (Dec. 12, 2001), 7th Dist. No. 01-527-CA.
 {¶ 7} On December 14, 2001, the juvenile court issued a "Nunc Pro Tunc Order of Adjudication." The juvenile court acknowledged that it had never executed a journal entry declaring Appellant to be a delinquent. The juvenile court then made a finding that Appellant was a delinquent, based on its previous finding that she had menaced two teachers at the school. The third count in the complaint, which alleged that Appellant menaced the school principal, was dismissed at a prior hearing.
 {¶ 8} The dispositional hearing was held on January 9, 2002. At the hearing, the prosecutor noted that Appellant had already spent twenty-four days in detention at Sargus. (1/9/02 Tr., p. 2.) The prosecutor was satisfied that this had been sufficient punishment. (1/9/02 Tr., p. 2.) The prosecutor recommended a ninety-day sentence, with credit for days served. The prosecutor also recommended that the remaining days be suspended and that Appellant be given six months of probation. (1/9/02 Tr., p. 2.) The trial court did not accept the prosecutor's recommendation and sentenced Appellant to ninety days of incarceration at Sargus, along with eighteen months of probation.
 {¶ 9} The juvenile court judge also held that, "[t]he stay of execution pending appeal order issued by the Court of Appeals on February 8, 2001 remains in effect." (1/9/02 Tr., p. 5.) It must be pointed out that the juvenile court's order is incorrect as to the effect of any prior stay issued by this Court. When this Court issues a stay of a lower court decision, pursuant to App.R. 7(A) the stay is only effective "pending appeal." This Court's stay expired upon termination of the prior appeal. We will interpret the juvenile court judge's statement to signify that he was issuing his own stay of execution of the dispositional order.
 {¶ 10} Appellant timely filed this appeal, which must be expedited pursuant to App.R. 11.2(D).
 {¶ 11} Appellant presents seven assignments of error for review. Appellant's first assignment of error is dispositive of the part of this appeal dealing with Appellant's delinquency adjudication, rendering as moot assignments of error two, three, four, five, and seven. Appellant's first assignment of error states:
 {¶ 12} "THE TRIAL COURT ERRED IN FINDING BEYOND A REASONABLE DOUBT THAT JUVENILE SAMANTHA CUNNINGHAM COMMITTED ALL OF THE ELEMENTS OF THE CRIME OF AGGRAVATED MENACING."
 {¶ 13} Appellant's argument appears to be that there was insufficient evidence to find that she committed aggravated menacing, and therefore, she could not have been adjudicated a delinquent.
 {¶ 14} "A `delinquent child' has been defined as a child whose conduct constitutes a violation of any criminal law statute." In reFelton (1997), 124 Ohio App.3d 500, 503, 706 N.E.2d 809. See former R.C. § 2151.02(A).
 {¶ 15} This Court's standard of review of a juvenile delinquency determination requires us to ascertain whether any reasonable trier of fact, after reviewing the evidence in the light most favorable to the prosecution, could have found that the essential elements of the complaint were proven beyond a reasonable doubt. In re Washington (1996),75 Ohio St.3d 390, 392, 662 N.E.2d 346; State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492. See Juv.R. 29(E)(4).
 {¶ 16} When a juvenile challenges the sufficiency of the evidence he or she is asking the reviewing court to make a determination as to whether the evidence is legally adequate to sustain a verdict. State v.Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. This is a question of law, which we review de novo. Id. A conviction, or in this case, a delinquency adjudication, based on legally insufficient evidence constitutes a denial of due process of law. See Tibbs v. Florida (1982),457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652.
 {¶ 17} This Court's function when reviewing sufficiency of the evidence is to examine the evidence admitted at trial and to determine whether, if it was believed, it would convince the average person of the defendant's guilt beyond a reasonable doubt. State v. Eley (1978),56 Ohio St.2d 169, 172, 10 O.O.3d 340, 383 N.E.2d 132. It is not the function of an appellate court to substitute its judgment for that of the factfinder. Jenks, 61 Ohio St.3d at 279, 574 N.E.2d 492. The weight to be given the evidence and the credibility of the witnesses are primarily issues for the trier of fact to determine. State v. Ballew (1996),76 Ohio St.3d 244, 249, 667 N.E.2d 369.
 {¶ 18} Appellant's argument relating to the insufficiency of the evidence has two prongs. First, Appellant asserts that she could not have "knowingly" committed aggravated menacing because, as all the witnesses agree, she did not personally deliver the letter to the victims. Appellant argues that, even if she did write Letter No. 1, she never intended for the letter to be read by those who were mentioned in the letter. This part of Appellant's argument is not persuasive.
 {¶ 19} Appellant was charged with being a delinquent by committing aggravated menacing. R.C. § 2903.21(A), the aggravated menacing statute, sets forth that: "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."
 {¶ 20} The delinquency proceedings focused on Letter No. 1. Because Appellee did not introduce Letter No. 2 into evidence and the trial court's judgment entry only refers to Letter No. 1, the delinquency adjudication must stand or fall based solely on the significance of Letter No. 1.
 {¶ 21} Appellant believes that in order to prove she had criminal intent, the state was required to prove that she delivered Letter No. 1 to those people mentioned in the letter. Appellant is mistaken in her understanding of criminal intent. "The law has long recognized that intent, lying as it does within the privacy of a person's own thoughts, is not susceptible of objective proof. The law recognizes that intent can be determined from the surrounding facts and circumstances, and persons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts." State v. Garner (1995),74 Ohio St.3d 49, 60, 656 N.E.2d 623.
 {¶ 22} The level of criminal intent required for aggravated menacing is that the defendant committed the crime "knowingly." "Knowingly" is defined in R.C. § 2901.22(B): "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 23} Based on the record here, a reasonable person could determine that: 1) Appellant either made and distributed copies of Letter No. 1, or left the letter in a public place so that it would be read by others in the school; and 2) Appellant was aware that Letter No. 1, with its controversial subject matter, would eventually make its way to school authorities, including those persons actually mentioned in the letter. Although this is not the only way to interpret the facts here, it is certainly a reasonable interpretation based on our standard of review and considering that we must look at the facts in a light most favorable to the prosecution. Under this interpretation, Appellant could well have intended for the victims to receive the letter, albeit through an indirect method.
 {¶ 24} The second prong of Appellant's insufficiency argument is that the language in Letter No. 1 does not constitute a threat of "serious physical harm" under any reasonable interpretation and therefore, writing and delivering the letter does not constitute aggravated menacing.
 {¶ 25} Appellant is correct that a threat of "serious physical harm," either to persons or to property, is an element of aggravated menacing. R.C. § 2903.21 (A).
 {¶ 26} "Serious physical harm to persons" is defined in R.C. §2901.01(A)(5) as:
 {¶ 27} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 28} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 29} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 30} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 31} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 32} "Serious physical harm to property" is defined in R.C. §2901.01(A)(6) as:
 {¶ 33} "* * * any physical harm to property that does either of the following:
 {¶ 34} "(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;
 {¶ 35} "(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time."
 {¶ 36} As previously noted, the charges against Appellant were based on Letter No. 1. Therefore, a very close examination of this evidence is necessary.
 {¶ 37} It is true that, "[w]hether a threat sufficient to support a charge of aggravated menacing has been made is a question of fact and one to be determined by the trier of fact." Dayton v. Dunnigan (1995),103 Ohio App.3d 67, 71, 658 N.E.2d 806. Nevertheless, there is an underlying legal issue as to whether the allegedly threatening words contained in Letter No. 1 may be criminally punished. "A person may not be punished for speaking boisterous, rude or insulting words, even with the intent to annoy another, unless the words by their very utterance inflict injury or are likely to provoke the average person in an immediate retaliatory breach of the peace. Cincinnati v. Karlan (1974),39 Ohio St.2d 107, 110, 68 O.O.2d 62, 64, 314 N.E.2d 162, 164; State v.Hoffman (1979), 57 Ohio St.2d 129, 11 O.O.3d 298, 387 N.E.2d 239. See, also, Chaplinsky v. New Hampshire (1942), 315 U.S. 568, 573,62 S.Ct. 766, 770, 86 L.Ed. 1031, 1036. That is, the words spoken must be `fighting words.' State v. Wylie (1984), 19 Ohio App.3d 180, 19 OBR 287,482 N.E.2d 1301." State v. Lamm (1992), 80 Ohio App.3d 510, 513,609 N.E.2d 1286. Profanity and insults, by themselves, cannot constitute any type of criminal threat and, therefore, cannot present a threat of serious physical harm. State v. Striley (1985), 21 Ohio App.3d 300, 302, 21 OBR 447, 488 N.E.2d 499.
 {¶ 38} A close look at Letter No. 1 reveals that most of the letter is made up of emotional outbursts laced with profanity. Part of the letter actually compliments a few teachers, and part of the letter is self-deprecating. The only portion of Letter No. 1 that might possibly be considered as threatening is as follows:
 {¶ 39} "* * * so from here on out we're going to try to make your life hell!?!?!?!. . . . . and we know where those BITCHES mentioned earlier live. . . . . so when you hear noises at night. . . . it's not just `nothing' . . . it'll be us!?!?!?"
 {¶ 40} Letter No. 1 does not threaten any harm to property. At most, it threatens that a trespass may take place, and trespassing does not fit into the definition of "serious physical harm to property" mentioned earlier. See R.C. § 2901.01(A)(6).
 {¶ 41} The only other threat in the letter is the reference to, "mak[ing] your life hell." Letter No. 1 also appears to define this reference by stating: "[t]here [are] only 14 more days of school (hell) and before we leave, * * *." Given that the letter is primarily an emotional outburst, albeit a very disrespectful and profane outburst, it is difficult to view the words "make your life hell" as anything other than rude, boisterous and insulting words. As such, those words do not qualify as aggravated menacing.
 {¶ 42} Appellee compares the language used in Letter No. 1 to a case in which a juvenile threatened to kill someone. In the Matter ofCleo W. (Sept. 29, 2000), 6th Dist. No. E-00-020. Cleo is instructive in that the Sixth District Court of Appeals determined that even a death threat, by itself, does not support a charge of aggravated menacing unless there is also evidence that the victim actually believed he or she would suffer serious physical harm. Id.
 {¶ 43} Nancy Custer, one of the victims in the case now before us, did not testify that she believed she would suffer serious physical harm. She testified that Letter No. 1 made her "apprehensive," "disappointed," and that she felt "astonishment." (10/25/00 Tr., pp. 43-44.) She testified that she did not worry about Letter No. 1 until she found out about subsequent threats, but she did not identify any subsequent threats made by Appellant. (10/25/00 Tr., p. 44.)
 {¶ 44} Janet Bogus, the other victim, testified that she had received a letter from Appellant prior to Letter No. 1, which was similar in content and style. (10/25 Tr., p. 56.) This prior letter was not produced at trial. Because of the earlier letter, Ms. Bogus testified that she felt "intimidated and threatened" by Letter No. 1. (10/25/00 Tr., p. 57.) Nevertheless, Ms. Bogus did not testify that she felt threatened with serious physical harm based on Letter No. 1 or the alleged prior letter. When asked what physical harm was threatened in Letter No. 1, her response was that she feared she would be "ambushed," and feared "guns in their back packs," "bombs in pop bottles," and being "stabbed." (10/25/00 Tr., pp. 60-61.) These concerns were apparently triggered, however, by Letter No. 2, which was not introduced and was not proved to have been authored by Appellant. Ms. Bogus' fears are not rationally or reasonably inferred from Letter No. 1 even considering that she had a prior letter from Appellant. Ms. Bogus eventually admitted that Letter No. 1 did not make any specific threat and only expressed general malice. (10/25/00 Tr., p. 62.) Ms. Bogus claims she inferred from this general malice that Appellant presented a serious threat. (10/25/00 Tr., p. 62.) This inference is not supported by the record, and for this reason we find that there is insufficient evidence of aggravated menacing.
 {¶ 45} The complaint filed against Appellant only alleged that she committed aggravating menacing. Aggravated menacing requires evidence that a victim is in reasonable fear of serious physical harm. Based on the evidence submitted, the record does not support that either victim had a reasonable belief of serious physical harm. Thus, there is no basis for the aggravating menacing charge and no basis for the delinquency adjudication.
 {¶ 46} Appellant's sixth assignment of error asserts:
 {¶ 47} "THE TRIAL COURT ERRED IN SUA SPONTE ISSUING AN ORDER AND PROCEEDING WITH HEARINGS ON THE ORDER COMMANDING TRESA CUNNINGHAM TO APPEAR AND SHOW CAUSE WHY SHE SHOULD NOT BE HELD IN CONTEMPT OF THE TRIAL COURT FOR HER ALLEGED FAILURE TO COMPLY WITH THE TERMS OF THE FEBRUARY 7, 2001, DISPOSITION ORDER THAT AT THE TIME HAD BEEN STAYED BY THIS COURT AND SUBSEQUENTLY WAS REVERSED AND REMANDED BY THIS COURT."
 {¶ 48} Appellant alleges that the trial court had no authority to initiate contempt proceedings against Tresa Cunningham, based on a violation of the February 7, 2001, order, because this Court issued a stay of execution of that order on February 8, 2001.
 {¶ 49} Appellant's argument is incorrect for two reasons. First, this Court's stay of execution only dealt with Appellant's ninety-day sentence to Sargus. We did not stay the portion of the judgment entry ordering Tresa Cunningham, Appellant's mother, to attend parenting classes. Tresa Cunningham's failure to attend these classes was the basis of the contempt proceedings. As the order to attend parenting classes was still in effect at all times prior to the contempt citation, Tresa Cunningham could be held in contempt for not obeying the order.
 {¶ 50} Second, Tresa Cunningham was not prejudiced by the contempt proceedings because they were dismissed. (10/25/01 Tr., p. 5.) Civ.R. 61, which applies to juvenile court proceedings, states:
 {¶ 51} "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."
 {¶ 52} An error that is harmless, i.e., that does not materially prejudice the complaining party, will not constitute reversible error.Nilavar v. Osborn (2000), 137 Ohio App.3d 469, 500, 738 N.E.2d 1271.
 {¶ 53} Because the juvenile court had the authority to hold Mrs. Cunningham in contempt for failing to obey the February 7, 2001, order, and because any possible error deriving from those contempt proceedings became harmless error once the contempt proceedings were dismissed, Appellant's sixth assignment of error is hereby overruled.
 {¶ 54} Because there is insufficient evidence of record that Appellant committed aggravating menacing, we reverse the December 14, 2001, delinquency adjudication and subsequent disposition and dismiss the delinquency charges filed against her. The remaining aspects of the juvenile court's orders remain unchanged. Appellant's sixth assignment of error is overruled. The remaining assignments of error are rendered moot. All costs to be taxed to the state.
Vukovich, P.J., concurs.
DeGenaro, J., concurs.