OPINION.
{¶ 1} Appellant, Richard Friesenhengst, appeals from the July 26, 2002 judgment entry of the Portage County Municipal Court, Kent Division, in which he was sentenced for menacing.
 {¶ 2} On December 17, 2001, a criminal complaint was filed against appellant for one count of menacing, a misdemeanor of the fourth degree, in violation of R.C. 2903.22(A). On January 15, 2002, appellant filed a waiver of time for trial, pursuant to R.C. 2945.71. On February 28, 2002, appellant filed a demand for trial by jury, based on Crim.R. 23.
 {¶ 3} A jury trial commenced on July 17, 2002. On July 18, 2002, the jury found appellant guilty of the offense charged. Pursuant to the July 26, 2002 judgment entry, the trial court sentenced appellant to thirty days in jail, with twenty-seven days suspended on the condition that appellant complete an anger management program. Appellant was also fined $250 plus court costs. The trial court stayed appellant's sentence pending appeal.
 {¶ 4} The facts emanating from the record are as follows. On December 7, 2001, appellant deposited a package near the campus mail bin located at the Kent State University ("KSU") student center. The package, which did not contain a return address, was wrapped entirely in newspaper and was addressed in large black letters to the "bungling, bureaucratic, incompetent idiots at parking services." The package was approximately eighteen inches square and contained boxes of decreasing dimensions along with appellant's signed personal check in the amount of "$10.00 and not a stinking cent more" made payable to the "Crummy Parking and Traffic" for payment of a KSU parking fine. Also, "stupid ass operation" was written in the memo portion of the check.
 {¶ 5} Due to the tragic events of September 11, 2001, including the anthrax mail scare, the KSU student center was on an alert issued by the Kent City Postal Office regarding suspicious letters and packages. Kelly Almashy ("Almashy"), an employee of KSU, delivers packages throughout the student center. According to Almashy's testimony, after returning from making some deliveries on December 7, 2001, she found the package at issue by the campus mail bin. Almashy stated that the package was larger than normal and spurred her curiosity due to the fact that it fit a list of guidelines for unusual, suspicious packages. Almashy testified that although she initially joked about the package for a second with a co-worker, she really "was kind of scared [because she] didn't know what was in it." Almashy stated that she was not joking when she said, "`I hope it's not a bomb or anything like that.'" She asked her co-workers if they had seen who dropped it off, but they did not. Within a minute or two, Almashy reported the suspicious package to her supervisor, Jennifer Gunnoe ("Gunnoe").
 {¶ 6} According to Gunnoe's testimony, when Almashy alerted her of the package, she immediately went to inspect it. Because it was wrapped in newspaper with no return address and due to the derogatory manner in which it was addressed, Gunnoe deemed that the package was hostile. Gunnoe stated that "[a]t that time the anthrax scare was going on. While I didn't notice any white powder substance I was not going to touch it or make that determination myself. That's why [within a minute or two] I called the police." The police advised Gunnoe not to touch the package, and she made sure that no one else touched it as well.
 {¶ 7} Officer James Campbell ("Officer Campbell") and Officer Deramo, both officers with the KSU police department, were on duty on December 7, 2001, and received the call from Gunnoe regarding the suspicious package. Approximately five minutes later, the officers arrived at the student center. Officer Campbell testified that "[a] few people were rushing around trying to see what was going on. A couple of them seemed like they were worried about what was in the package. * * * [T]hey seemed nervous * * * [and] concerned." Officer Campbell further stated, "I was nervous. [The package] definitely fit my criteria for [a] suspicious package with everything I had always been trained about. I advised Officer Deramo to stand there and make sure nobody touched it and to not use his radio. That's what we're trained to do in case there is a radio-detonating device on a bomb or something like that, and I contacted the sergeant at the station." Based on orders from Sergeant Hendry, Officer Campbell collected the package and took it to the Stockdale Building.
 {¶ 8} The officers opened the package, which contained approximately five smaller boxes, as well as newspapers and plastic bags. Inside the smallest box was appellant's personal check to KSU parking services. Sergeant Hendry contacted the prosecutor's office and advised Officer Campbell to charge appellant with menacing. In the course of the investigation, appellant admitted to placing the suspicious package in the student center. Regarding a conversation between Officer Campbell and appellant, Officer Campbell testified that appellant was "* * * very irate. He was very argumentative and was expressing some great displeasure towards the parking services department at [KSU]." Officer Campbell also observed appellant crumble the summons upon receipt.
 {¶ 9} Pursuant to the July 26, 2002 judgment entry, appellant filed a timely notice of appeal on August 21, 2002, and makes the following assignments of error:
 {¶ 10} "[1.] The trial court erred to the prejudice of [appellant] in misapplying Ohio's menacing statute, [R.C. 2903.22(A)] under the facts of this case.
 {¶ 11} "[2.] Appellant's conviction for menacing was based upon insufficient evidence.
 {¶ 12} "[3.] [Appellant's] conviction for menacing was against the manifest weight of the evidence in this case.
 {¶ 13} "[4.] The menacing statute as applied by the trial court in this case is unconstitutionally overbroad, and was improperly used to punish [appellant's] exercise of his right of free speech under the First Amendment of the Ohio and United States Constitutions."
 {¶ 14} Because appellant's first and second assignments of error are interrelated, they will be addressed in a consolidated fashion. Appellant's first two assignments of error question the interpretation of R.C. 2903.22(A) in determining if the prosecution established the necessary elements of this crime. In other words, both assignments question the sufficiency of the evidence used to convict appellant. In his first assignment of error, appellant argues that the indirect contact between himself and the complaining witnesses was too removed and unrelated for finding him guilty of menacing in violation of R.C.2903.22(A). In his second assignment of error, appellant contends that where there is no actual evidence of a threat, animosity, personal contact, or physical harm, as well as no evidence of his intent, the weight of the evidence is insufficient to establish guilt of menacing beyond a reasonable doubt.
 {¶ 15} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14:
 {¶ 16} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 17} "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. * * *'"
 {¶ 18} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *" (Emphasis sic.) (Citations omitted.)
 {¶ 19} "A reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v. March
(July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 20} R.C. 2903.22 provides in pertinent part:
 {¶ 21} "(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family.
 {¶ 22} "(B) Whoever violates this section is guilty of menacing. * * *."
 {¶ 23} According to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 24} When an individual knowingly causes another to believe that the offender will cause physical harm to another's person or property or member of his immediate family, the offense of menacing is committed.Niles v. Holloway (Oct. 3, 1997), 11th Dist. No. 96-T-5533, 1997 Ohio App. LEXIS 4517, at 4. "The threat need not actually be verbalized; it can be implied by the offender's actions." Id. at 5, citing State v. Hoaglin
(Mar. 25, 1993), 3d Dist. No. 15-92-15, 1993 Ohio App. LEXIS 1718, at 3. "The key is whether the victim genuinely believes that he or she is facing physical harm to person or property." Holloway at 5.
 {¶ 25} In the case at bar, appellant argues that the prosecution did not present sufficient evidence on each element of the offense to allow the trier of fact to conclude beyond a reasonable doubt that he committed the offense of menacing. We disagree. There is absolutely nothing in R.C. 2903.22(A) which requires proof that appellant had direct or face-to-face contact with another person. Rather, the prosecution is only required to prove that appellant knowingly caused another to believe that he will cause physical harm to the person or property of another.
 {¶ 26} It is evident from the record that appellant knowingly caused the victims to believe that he would cause them physical harm by placing a suspiciously wrapped package in the mail area of the KSU student center on December 7, 2001, at the height of the anthrax mail scare in connection with the tragedies of September 11, 2001. Regardless of appellant's purpose, the foregoing facts and societal circumstances establish appellant's awareness that his actions would probably cause a certain result, pursuant to R.C. 2901.22(B). As such, appellant's actions were intentionally aimed at inducing fear in the victims. Thus, appellee carried its burden of persuasion with respect to the mens rea element of menacing.
 {¶ 27} Also, both Almashy and Gunnoe testified to the effect that they were concerned and scared and believed that the possible contents of appellant's suspicious package would cause them physical harm. Almashy brought her initial fear of the package to Gunnoe's attention, who immediately contacted the police. Even Officer Campbell testified that he was "nervous" as well. Pursuant to Holloway, supra, appellant's threat was implied by his actions, which led to the victims' genuine belief that they were facing physical harm. Therefore, when viewed in a light most favorable to the prosecution, we find that appellee presented sufficient evidence, based on Schlee, supra, from which a rational trier of fact could find that appellant committed the offense of menacing, in violation of R.C. 2903.22(A). Thus, appellant's first and second assignments of error are without merit.
 {¶ 28} In his third assignment of error, appellant argues that his conviction for menacing was against the manifest weight of the evidence. Appellant specifically contends that the trier of fact lost its way by making unreasonable inferences from the evidence concerning the actual existence of a threat and his intention to make a threat against the "bungling, bureaucratic, incompetent idiots at parking services," which resulted in a miscarriage of justice.
 {¶ 29} As this court stated in Schlee, supra, at 14-15:
 {¶ 30} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 31} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 32} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 33} In the case sub judice, appellant argues that there was no credible evidence presented to show that he knowingly made a threat in which he was aware that his conduct of mailing a package containing his check for a parking ticket would achieve any result besides delivery of the package to the KSU parking services. Appellant contends that there was a lack of evidentiary weight to show that the witnesses felt threatened by the presence of the package and the surrounding circumstances. We disagree.
 {¶ 34} In the instant matter, appellee presented credible evidence of appellant's guilt. Pursuant to Almashy's testimony, she was scared because she did not know what was inside the suspicious package and hoped that it was not a bomb. Within a minute or two, Almashy reported the suspicious package to Gunnoe. According to Gunnoe's testimony, she immediately went to inspect the package and deemed it to be hostile. Because the anthrax mail scare was going on as a result of the September 11, 2001 terrorist attacks and because appellant's package met the criteria of a suspicious package, Gunnoe became fearful, advised that no one touch it, and immediately contacted the police. Even Officer Campbell testified that the package made him "nervous," because it definitely fit the elements for a suspicious package. Therefore, the weight of the evidence at trial established that appellant, based on the surrounding circumstances, knowingly caused the victims to actually feel threatened, which is evident from their testimony. Appellant did not leave his check in a standard envelope, but rather in a small box surrounded by approximately five other boxes, wrapped in newspaper, with no return address, to the "bungling, bureaucratic, incompetent idiots at parking services." Appellant's actions, in the context of the societal climate at that time, show that he knowingly made a threat that he was aware would cause another to believe would result in physical harm. Therefore, pursuant to Schlee and Thompkins, supra, the jury did not clearly lose its way by finding appellant guilty of menacing, in violation of R.C.2903.22(A). Thus, appellant's third assignment of error is without merit.
 {¶ 35} In his fourth assignment of error, appellant argues that R.C. 2903.22(A), as applied by the trial court in this case, is unconstitutionally overbroad and was improperly used to interdict his right to free speech under the First Amendment of the Ohio and United States Constitutions. Appellant specifically contends that his free speech rights should not be criminalized based on the speculations surrounding the facts of this case due to the fears of September 11, 2001.
 {¶ 36} State v. Collier (1991), 62 Ohio St.3d 267, 269, states: "[i]t is well established that all legislative enactments must be afforded a strong presumption of constitutionality. * * * Moreover, if at all possible, statutes must be construed in conformity with the Ohio and United States Constitutions. * * * Lastly, the party asserting that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail. * * *" (Citations omitted.)
 {¶ 37} To find a statute unconstitutional as applied, it must be determined whether appellant had a constitutionally protected right to engage in the type of activity he allegedly committed. State v. Bilder
(1994), 99 Ohio App.3d 653, 663-664. If appellant did not have a constitutionally protected right to engage in those activities, then his argument that the statute is unconstitutionally overbroad must fail. Id at 664.
 {¶ 38} This court stated in State v. Jones, 11th Dist. No. 2002-T-0084, 2003 Ohio 2920, at ¶ 14, that "* * * the overbreath doctrine has no application to criminal statutes outside the First Amendment." "* * * [T]he fighting words exception to the First Amendment falls within the disorderly conduct arena and has no relevancy in [a] * * * menacing situation." Dayton v. Dunnigan (1995),103 Ohio App.3d 67, 71. "The crime of * * * menacing is triggered by a threat which intimidates or causes fear or apprehension by the recipient." Id., citing State v. Schwartz (1991), 77 Ohio App.3d 484,486. "Such threats are not among the class of utterances which are protected by the First Amendment." Dunnigan at 71.
 {¶ 39} In the case at bar, the record reflects that appellant preserved for review a First Amendment objection to R.C. 2903.22. Appellant argues that R.C. 2903.22(A) is unconstitutionally overbroad and punished his right to free speech. Appellant stresses that the ultimate question in the instant matter is whether it was established that his speech fell within one of the unprotected categories, particularly the "fighting words" exception. As authority, however, appellant cites to disorderly conduct cases, which have no bearing on the present "threat" case.
 {¶ 40} Pursuant to Dunnigan, supra, the fighting words exception to the First Amendment falls within the purview of disorderly conduct and has no relevancy to a menacing case. R.C. 2903.22(A) is a criminal statute aimed at prohibiting harmful conduct rather than the expression of ideas or beliefs. Appellant did not have a constitutionally protected right to knowingly cause two victims to believe that his suspicious package would cause physical harm. Therefore, based on Bilder, supra, R.C. 2903.22(A) is not overbroad since the First Amendment does not protect the type of activity that appellant committed. Thus, appellant's fourth assignment of error is without merit.
 {¶ 41} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Municipal Court, Kent Division, is affirmed.
Judgment affirmed.
WILLIAM M. O'NEILL and CYNTHIA WESTCOTT RICE, J., concur.