[Cite as *Garfield Hts. v. Smith*, 2024-Ohio-2164.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

CITY OF GARFIELD HEIGHTS,            :

    Plaintiff-Appellee,            :

                  No. 112688

    v.            :

CORNEZE SMITH,            :

    Defendant-Appellant.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 6, 2024

---

Criminal Appeal from the City of Garfield Heights Municipal Court
Case No. CRB2200805

---

***Appearances:***

Edward Fadel, Prosecuting Attorney for the City of
Garfield Heights, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Aaron T. Baker, Assistant Public Defender, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Corneze Smith ("Smith"), appeals his conviction for aggravated menacing. For the reasons set forth below, we affirm Smith's conviction.

## I. Facts and Procedural History

{¶ 2} On June 9, 2022, Smith was charged in Garfield Heights Municipal Court with aggravated menacing and domestic violence. That same day, the victim, R.H., obtained a domestic violence temporary protection order against Smith. The matter proceeded to a jury trial in February 2023, at which the following evidence was adduced.

{¶ 3} R.H. and Smith married in 2007 and share two children, C.S. and T.S. R.H. and Smith divorced in 2014. Their son, C.S., who was a freshman at the time, played varsity baseball for his high school. According to R.H., she prefers not to address C.S.'s performance after his games. Rather, she waits for C.S. to start the discussion. Whereas Smith does not share that same approach because he played baseball in college and prefers to dissect every game with C.S. On May 2, 2022, R.H. and Smith both attended C.S.'s baseball game in Garfield Heights. C.S. did not play his best, and afterwards, Smith began to discuss with C.S. things he could have done differently. Their conversation took place near the stands in front of the other players and their families.

{¶ 4} R.H. described Smith's demeanor during this conversation as "standoff-ish" and C.S. appeared "[a]gitated." (Tr. 169, 170.) R.H. testified that Smith then instructed C.S. to get his belongings out of Smith's car. According to C.S., Smith asked him to "get your sh*t out my car." (Tr. 237.) C.S. obliged, but R.H. asked her eldest son, N.R., who was also in attendance, to escort C.S. to

Smith's vehicle while she stayed at the post-game dinner. R.H. became concerned after C.S. and N.R. had not returned so she headed towards the parking lot.

{¶ 5} As she walked towards the parking lot, she observed her sons putting items in her trunk. Smith then pulled up next to them and began yelling at C.S. Smith yelled, "I work too mother f*****g hard for you to act like you act." (Tr. 172.) C.S., who was sitting in R.H.'s car at this point, replied, "[I]f you don't want to be in my life, get the hell out." (Tr. 238.) Smith then exited his car, approached C.S. and said, "Come here, I'm going to beat your a**." (Tr. 239.) R.H. intervened in between them and stated to Smith, "No, not my child * * * You're acting like a child." (Tr. 173-174.) Smith and R.H. continued arguing back and forth until R.H. said, "I'm tired, I'm done." (Tr. 174.)

{¶ 6} R.H. then turned toward her car, looking for her keys. Shortly thereafter, Smith walked up to R.H. with a gun in his right hand and said, "If you're going to shoot me, shoot me." (Tr. 175.) In response, R.H. questioned Smith asking him "[w]hat are you talking about?" (Tr. 175.) R.H. testified that she did not have a gun on her or in her car at that time. R.H. testified that when she observed the gun, she was in "fear for [her] safety" as well as her "children's safety." (Tr. 176.) R.H. further testified that she was intimidated by "the firearm in [Smith's] hand." (Tr. 176.)

{¶ 7} C.S. testified that Smith stated to R.H., "If you're going to pull it, you better use it." (Tr. 244.) C.S. believed Smith was referring to a weapon, and he

observed Smith grabbing a gun from his trunk and walking back towards R.H. C.S. then told R.H. to get into the car because he was afraid Smith would use the gun.

{¶ 8} At that point, N.R. stepped in and defused the situation. N.R. testified that he heard Smith say to R.H., "I'll f**k you up" and "[i]f you're going to pull it, then pull it." (Tr. 209, 210.) N.R. observed Smith approach R.H. with a gun at his side. N.R. intervened, trying to deescalate the situation and told Smith to put the gun away. N.R. further testified that R.H. appeared rattled and asked him to sit with her before leaving the parking lot. N.R. testified that he believed the purpose of the firearm was to shoot his mother.

{¶ 9} The incident ended by R.H. getting into her car and Smith speeding off and yelling obscenities as he left the baseball field. R.H. did not return to the post-game dinner. Instead, she and C.S. drove home, with N.R. following them. Both R.H. and C.S. were crying while in the car and at home. About an hour later, R.H. went to the Garfield Heights Police Department and filed a report and a protection order because she "felt fear for [her] life and [her] children's." (Tr. 181.)

{¶ 10} Following the conclusion of trial, the jury found Smith guilty of aggravated menacing and not guilty of domestic violence. The court sentenced Smith to 180 days in jail, with 170 of those days suspended, a $1,000 fine, court costs, a domestic violence/anger management program, and one year of

community-control sanctions.[1]   The court also terminated the temporary protection order.

{¶ 11}  Smith now appeals, raising the following assignments of error for review:

**Assignment of Error I:**

The trial court erred by failing to grant a judgment of acquittal pursuant to Crim.R. 29, and thereafter entering a judgment of conviction which was not supported by sufficient evidence, in derogation of [Smith's] right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution, as well as Section 16 of the Ohio Constitution.

**Assignment of Error II:**

The trial court erred by entering a judgment of conviction that was against the manifest weight of the evidence and in derogation of [Smith's] right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution.

**Assignment of Error III:**

The trial court abused its discretion in admitting evidence that was irrelevant or far more prejudicial than it was probative of any issue in question when it permitted the city to present testimony regarding orders of protection, personal belief without foundation, and victim impact testimony, resulting in a deprivation of [Smith's] due process right to a fair trial.

## II.  Law and Analysis

### A. Sufficiency of the Evidence

{¶ 12}  In the first assignment of error, Smith argues that the trial court erred when it denied his Crim.R. 29(A) motion because the evidence was insufficient to

---

[1] The court stayed Smith's jail sentence pending his appeal.

establish the elements of aggravated menacing, which provides in relevant part that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, * * * or a member of the other person's immediate family." R.C. 2903.21(A).

{¶ 13} We note that "[a] motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995); *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing sufficiency is to determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 14} With a sufficiency inquiry, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387. A sufficiency of the evidence argument is not a factual determination, but a question of law. *Thompkins* at 386.

{¶ 15} In *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, the Ohio Supreme Court cautioned:

> But it is worth remembering what is not part of the court's role when conducting a sufficiency review. It falls to the trier of fact to "'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" [*State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 24], quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, an appellate court's role is limited. It does not ask whether the evidence should be believed or assess the evidence's "credibility or effect in inducing belief." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. Instead, it asks whether the evidence against a defendant, if believed, supports the conviction. *Thompkins* at 390 (Cook, J., concurring).

*Id.* at ¶ 16.

{¶ 16} Smith argues the city failed to produce sufficient evidence that R.H. feared that he would cause any physical harm, let alone serious physical harm. He relies on the fact that R.H. never testified that she feared being shot or otherwise feared serious physical harm. In support of his argument, Smith cites *Garfield Hts. v. Greer*, 8th Dist. Cuyahoga No. 87078, 2006-Ohio-5936 and *Walton Hills v. Tate*, 2016-Ohio-697, 60 N.E.3d 611 (8th Dist.). Smith's reliance on these cases is misplaced. Both cases are road-rage matters that are distinguishable from the case before us. In *Greer*, the defendant "did nothing more than brandish a gun that even the victim questioned as being real. There was no evidence that he pointed the gun at the victim, or took any other action to make the victim believe that serious physical harm would ensue." *Id.* at ¶ 10. In *Tate*, the victim "only testified that the defendant screamed 'pretty provocative and mean things at me.'

She never testified that she believed she was in danger of serious physical harm from [the defendant]." *Id.* at ¶ 15.

{¶ 17} Whereas in the instant case, the evidence at trial revealed that during a heated argument, Smith stated, "I'll f**k you up," went back to his car to get a gun, brandished that firearm as he approached R.H., and made statements alluding to shooting her. R.H. testified that she was intimidated by Smith's actions and feared for her safety. C.S. was yelling for her to get in the car, and N.R. had to intervene to deescalate the situation. The testimony further revealed that as a result of this incident, R.H. was shaking and crying and filed a police report and a protection order shortly thereafter. Additionally, R.H. testified that she did not record the incident on her phone, because at that moment, she was most concerned for her children's safety.

{¶ 18} Moreover, while there was no testimony indicating that Smith pointed his gun at anyone or threatened to shoot, we have previously found that "it is not an element of the offense of aggravated menacing that the offender either intends to carry out his threat or that he is even able to carry it out." *State v. Perkins*, 8th Dist. Cuyahoga No. 86685, 2006-Ohio-3678, ¶ 14, citing *Dayton v. Dunnigan*, 103 Ohio App.3d 67, 71, 658 N.E.2d 806 (2d Dist.1995). Rather, "[w]hat is necessary to establish the crime of aggravated menacing is the victim's subjective belief that the defendant will cause serious physical harm." *Id.*, citing *State v. Klempa,* 7th Dist. Belmont No. 01 BA 63, 2003-Ohio-3482. When viewing the above evidence in the light most favorable to the city, we find sufficient evidence was presented to

establish that R.H. believed that Smith would cause serious physical harm to herself or her children. Therefore, the court properly denied Smith's motion for acquittal.

{¶ 19} The first assignment of error is overruled.

**B. Manifest Weight of the Evidence**

{¶ 20} In the second assignment of error, Smith argues that his conviction is against the manifest weight of the evidence.

{¶ 21} When reviewing a manifest weight challenge, an appellate court, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Virostek*, 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, ¶ 54, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541 (1997), quoting *Martin* at 175.

{¶ 22} As this court has previously stated:

> The criminal manifest weight-of-the-evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541 (1997). Under the manifest weight-of-the-evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive — the state's or the defendant's? *Wilson* at *id.* Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight

of the evidence. *Thompkins* at 387; *State v. Johnson*, 88 Ohio St.3d 95, 2000-Ohio-276, 723 N.E.2d 1054 (2000).

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Wilson* at *id.*, quoting *Thompkins* at *id.*

*State v. Williams*, 8th Dist. Cuyahoga No. 108275, 2020-Ohio-269, ¶ 86-87.

{¶ 23} Smith incorporates his arguments from the first assignment of error and contends that the jury lost its and created a manifest miscarriage of injustice. We disagree.

{¶ 24} Here, R.H., C.S., and N.R. each testified consistently as to the threats made by Smith, his possession of a gun, and Smith's advance with the gun, towards R.H. R.H. testified to being intimidated, in fear of her safety and the safety of her children, and rattled by Smith's conduct. She asked N.R. to sit with her after Smith left the scene, where she was visibly upset and crying before she went home. Thereafter, she went to the police station to file a police report and a protection order. Smith's conviction is not against the manifest weight of the evidence.

{¶ 25} Therefore, the second assignment of error is overruled.

**C. Testimony Issues**

{¶ 26} In the third assignment of error, Smith argues the court abused its discretion when it permitted the city to present irrelevant testimony in the following three instances: (1) R.H.'s testimony regarding the protection order; (2) N.R.'s testimony regarding his subjective beliefs; and (3) C.S.'s victim-impact testimony.

Smith contends that these three instances prejudiced him and resulted in an unfair trial.

{¶ 27} We note that the admission or exclusion of evidence lies in the trial court's sound discretion and "'unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.'" *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984), quoting *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

### 1. Protection Order

{¶ 28} Smith first argues the testimony that R.H. obtained "Orders of Protection * * * specifically as it relates to this case" bolstered R.H.'s credibility and prejudiced him. (Tr.179-180.) He claims that this testimony could have led the jury to believed that "some other factfinder believed [R.H.] and issued 'Orders of Protection.'"

{¶ 29} In the instant case, R.H. testified that she went to the police station approximately one hour after the incident to file a police report. She requested a protection order with the filing of the report because she feared for her life and her children's lives. Both R.H. and her children testified that she was rattled and crying just before filing the report. R.H.'s testimony regarding the protection order was relevant to her subjective belief of serious physical harm. "'Relevant evidence' means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Evid.R. 401.

{¶ 30} This evidence is relevant to corroborate R.H.'s previous statements relating to how she feared for her safety when Smith approached her with a gun. Her statements about how she felt during the incident coupled with her request for a protection order tend to make the existence of her fear of serious physical harm more probable and therefore was admissible. The court did not abuse its discretion in allowing this evidence.

{¶ 31} Additionally, Smith's suggestion that the factfinder could be misled into believing that another factfinder believed R.H. is unsupported by the record. R.H. was asked if she obtained a protection order upon filing the police report and why she requested one. No evidence was elicited to explain the process to obtain the order, whether another party believed her, or whether any previous testimony was presented. The admission of this evidence did not result in unfair prejudice to Smith.

### 2. N.R.'s Testimony

{¶ 32} Next, Smith argues that N.R.'s testimony that he believed Smith was going to shoot R.H. was irrelevant because he was not a named victim and his own subjective thoughts were not at issue. Specifically, N.R. testified:

[CITY]: When you saw the firearm * * * what did you believe to be the purpose of that firearm?

* * *

[N.R.]: Well, it was to shoot.

[CITY]: Okay. To shoot who, specifically?

[N.R.]: My mother.

(Tr. 222.)

{¶ 33} Evid.R. 701 states that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 34} This is the precise nature of N.R.'s testimony. The above exchange was during the city's redirect examination of N.R. N.R.'s previous testimony included that he was at the altercation; he intervened to break up the fight; he observed the gun; and he was protecting his mother. His testimony was based on his perception and helped the jury understand the incident. Therefore, the court properly admitted this testimony.

### 3. C.S's Testimony

{¶ 35} Smith also argues he was prejudiced when C.S. was allowed to testify about the impact this incident had on him because it has no bearing at trial and is highly prejudicial. This court has stated that "[v]ictim-impact testimony describes a victim's suffering or otherwise elicits sympathy and bias from a jury. Insofar as such testimony has no probative value, it is inadmissible." *State v. Milam*, 8th Dist. Cuyahoga No. 86268, 2006-Ohio-4742, ¶ 65, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 213. Typically, victim-impact statements are not relevant under Evid.R. 403(A), which provides, "[a]lthough relevant,

evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 36} Here, C.S. testified that this incident "impacted me because I wish this would have never happened with my dad." (Tr. 247.) This statement, however, does not seek to elicit sympathy or bias from the jury. C.S. does not expound on his emotions, the lasting impact this incident has had, or if this has impacted his family in any way. Rather, it was offered to establish what he witnessed between his parents and that he wished it never happened. We cannot say that this evidence confused the issues or misled the jury. As a result, we find that the court did not abuse its discretion when it allowed this testimony.

### 4. Cumulative Error

{¶ 37} Alternatively, Smith contends that if we disagree with his assessment, then we find that these instances collectively warrant reversal under the doctrine of cumulative error. However, having found that the testimony was not admitted in error, we likewise decline to find cumulative error.

{¶ 38} Therefore, the third assignment of error is overruled.

{¶ 39} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., and
FRANK DANIEL CELEBREZZE III, J., CONCUR