OPINION
{¶ 1} In this case, Shelonda Jackson appeals from a trial court judgment finding her guilty of aggravated menacing. Shelonda was originally charged with two counts of aggravated menacing for acts that took place on April 24, 2004. The charges arose from events that occurred within a few days of the death of Shelonda's father — events that reflect poorly on most of the family members who were involved.
 {¶ 2} Early on the morning of April 22, 2004, Linda Fields went to the home of her boyfriend, Rolen Jackson, and discovered that Rolen had passed away. Apparently, Rolen had been ill for some time. Shelonda Jackson was Rolen's daughter, and lived two doors down from her father's house, on the same side of the street. After the police arrived, Linda went outside. Shelonda happened to notice that Linda was outside and was upset. Linda told Shelonda that Rolen was unresponsive, and both women were present when Rolen's body was removed from his house.
 {¶ 3} Ina Jackson arrived shortly after the body was found. Ina was Rolen's niece and was the daughter of Rolen's sister, Wanda Anderson. At first, Shelonda and Ina worked together, trying to find papers. However, after more family members arrived, fighting broke out. Ina testified that Shelonda jumped off the porch and hit her when she tried to intervene in a fight between Rolen's son, Rodney, and Arthdare, another of Rolen's sisters.
 {¶ 4} Wanda arrived at Rolen's house around 11:00 a.m. Wanda and Shelonda were on good terms before Rolen died. However, relations rapidly deteriorated. Wanda testified that Rolen had asked her to take care of everything if something happened to him. Wanda also testified that Rolen wanted her to have the house and all his possessions. Unfortunately, Rolen did not leave a will. A deed had been filed in 1997, transferring the title in Rolen's home to Wanda. Wanda admitted at trial that Rolen's signature was not on the deed; however, she claimed Rolen had taken the deed himself to be recorded.
 {¶ 5} Wanda testified that when she arrived at the house, Rolen's children were saying they wanted this and that out of the house, and she told them not to come into the house. Wanda tried to explain that she had to find papers and make arrangements for Rolen's burial. When the children persisted in asking why they could not come in, Wanda walked away with her hand in the air. At that point, Shelonda said, "Aunt Wanda, if I had a dick, I'd make you suck it."
 {¶ 6} In contrast, Shelonda testified that when Wanda arrived at Rolen's house on the day of his death, Wanda's first words were, "This is mine, the house, the lot, the cars, everything. You guys don't get anything." Wanda subsequently made Shelonda and Rolen's other children leave the house. Wanda then locked herself, her daughter, Ina, and some of Wanda's other relatives inside the house.
 {¶ 7} One of Wanda's nieces, Dawn Crum, was inside the house with Wanda and the other relatives. Dawn testified that a lot of illegal activity was going on. People were trying to match Rolen's signature so they could get a power of attorney signed to get Rolen's money out of his bank accounts. Apparently, bank statements had been found and indicated that Rolen had $11,000 in his bank account.
 {¶ 8} Wanda's daughter, Ina, was walking around pointing at property that she wanted taken from the house to her residence. In addition, both Wanda and Ina admitted at trial that they had cashed Rolen's $1,200 social security check at a supermarket the day of Rolen's death. Allegedly, Rolen had already signed the check, and Ina was supposed to take him to the bank the morning of his death — so they cashed the check after he died. Rolen's brother, Clarence Jackson, also brought a tow truck to the house the day of Rolen's death, and removed cars from the premises.
 {¶ 9} An additional dispute occurred over funeral arrangements. The day after Rolen's death, Wanda and her siblings made arrangements with a funeral home, without including Shelonda's input. They also chose not to include Rolen's twelve children (who were apparently conceived with different mothers), in the obituary. Wanda told the children if they wanted a different obituary, they could put one in the newspaper. However, she would not pay for it.
 {¶ 10} In an attempt to restore harmony, Wanda and her siblings invited Rolen's children to Rolen's house for dinner on April 24, 2004. Some of the family had never even met Rolen's children. The three children who lived in town (Shelonda, Jaquatta, and Rodney) came to the dinner. Unfortunately, more fighting erupted after the meal. Shelonda told Wanda that since her father had taught her to "kick ass and ask questions later," she was going to kick Wanda's ass. Wanda did not respond to this threat, and instead tried to talk things out. During this argument, Shelonda told Wanda that if Wanda took Rolen's house, Shelonda was going to burn the house down, and was also going to burn the house down where Wanda lived. Shelonda also threatened to have Wanda's family killed. Wanda testified that she believed Shelonda would cause her serious physical harm, as Shelonda had already hit Ina a few days before. Ina also testified about the threats, but indicated that the actual threat to her was on April 22, 2004, rather than April 24, 2004 (which was the date on the criminal complaint).
 {¶ 11} Ultimately, Wanda left Rolen's house, after telling her brothers and sisters that she would not have a funeral for Rolen and would cancel the arrangements at the funeral home. The next morning, Wanda cancelled the funeral arrangements and planned a church service for the family. Wanda told Shelonda, Rodney, and Jaquatta that if they came to the church, she would call the police and have them removed. Shelonda and the other children then held the funeral themselves and paid for it.
 {¶ 12} Three witnesses testified and supported Wanda's account of the dispute on Saturday. These witnesses were Wanda's daughter, Ina, Wanda's son, Willie (who was also a minister), and Wanda's brother, Clarence. In contrast, Wanda's niece, Dawn Crum, testified that an argument did occur, but that Shelonda did not threaten Wanda. Shelonda also denied threatening Wanda or Ina. Shelonda did admit to making a remark about a penis to her aunt. However, she said the remark was prompted by Wanda's refusal to let Shelonda take a cup of dog food from Rolen's yard. Supposedly, Rolen's dogs had been allowed to roam free in the neighborhood. After Rolen's death, Shelonda purchased a cage for the dogs and was attempting to care for them. When Shelonda asked Wanda for some food for the dogs, Wanda told Shelonda that she could not have anything from her father's house.
 {¶ 13} After hearing the above evidence, the trial court found Shelonda not guilty of aggravated menacing with regard to Ina, and guilty of aggravated menacing with regard to Wanda. In explaining its decision, the court observed that the prosecution version of events made more sense in view of the circumstances of the case, the death of Shelonda's father, the property disputes, and the emotions involved. The court then sentenced Shelonda to 180 days in jail, but suspended the sentence based on Shelonda's future good behavior. Shelonda was also placed on a year's probation, was required to attend anger management, was ordered to stay away from Wanda, and was required to perform eight hours of community service.
 {¶ 14} Shelonda now appeals, claiming in a single assignment of error that the court's decision was against the manifest weight of the evidence. In this regard, Shelonda relies on the fact that Wanda's testimony was contradicted by that of Dawn Crum. Shelonda also focuses on Wanda's testimony that when Shelonda threatened to kick Wanda's ass, Wanda said, "No your (sic) not. * * * If you all have a problem, we can sit down and discuss it."
 {¶ 15} In deciding if a conviction is against the manifest weight of the evidence, the appellate court, after reviewing the record, "`weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, quoting from State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. We should exercise our discretion to grant "`only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting Martin.
 {¶ 16} As we mentioned, Shelonda was charged with aggravated menacing, which is a violation of R.C. 2903.21(A). This statute provides that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." "Whether a threat sufficient to support a charge of aggravated menacing has been made is a question of fact and one to be determined by the trier of fact." Dayton v. Dunnigan (1995),103 Ohio App.3d 67, 71, 658 N.E.2d 806.
 {¶ 17} In view of the testimony of Wanda Anderson and her family members, the conviction of aggravated menacing is not against the manifest weight of the evidence. There are conflicts in the evidence — and they do come from a witness with no seeming profit motive or reason to lie. However, the trial court is in the best position to assess credibility. See, e.g., State v.Culver, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, at ¶ 37. The trial court in this case found the prosecution version reasonable under the circumstances, and we must agree. In this regard, we note that Shelonda did admit to using harsh and distasteful language against her aunt on the after day her father's death. Shelonda's language and reactions on that occasion were similar to comments that were made on the day of the alleged crime. Emotions were obviously running high, and the shock and grief of a loved one's death often produce inappropriate behavior that is later regretted. We do note that the alleged conduct of Wanda and other relatives, if true, is disturbing and shows a singular lack of sensitivity to the decedent's memory. Nonetheless, threatening to kill other family members and to burn down their homes is a completely unwarranted response and also shows insensitivity to the decedent's memory.
 {¶ 18} Accordingly, the single assignment of error is overruled and the judgment of the trial court is affirmed.
Donovan, J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).