[Cite as *State v. Sheeders*, 2019-Ohio-3120.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-2 |
| | : | |
| v. | : | Trial Court Case No. 18-CRB-001- |
| | : | 0765 |
| JASON M. SHEEDERS | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Municipal Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of August, 2019.

. . . . . . . . . . .

CHANCE O. COX, Atty. Reg. No. 0095164, P.O. Box 158, Greenville, Ohio 45331
        Attorney for Plaintiff-Appellee

V. GAYLE MILLER, Atty. Reg. No. 0091528, P.O. Box 10124, Dayton, Ohio 45417
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Following a bench trial, Jason M. Sheeders was found guilty of aggravated menacing and unlawful restraint, and he was sentenced to 180 days in jail (with credit for two days served), fines totaling $400, and court costs. He appeals from that Darke County Municipal Court judgment. The judgment of the trial court will be affirmed.

**Factual and Procedural Background**

{¶ 2} On December 9, 2018, Sheeders was charged by Officer Brandon Hardy of the Greenville Police Department with one count of aggravated menacing in violation of R.C. 2903.21, a first-degree misdemeanor, and one count of unlawful restraint in violation of R.C. 2905.03(A), a third-degree misdemeanor. After Sheeders entered a plea of not guilty, counsel was appointed to represent him.

{¶ 3} The matter proceeded to a trial to the Darke County Municipal Court on January 7, 2019. Sarah Dynes testified that on the evening of December 9, 2018, she was at her home in Greenville with her friend Kayla Trittschuh and Trittschuh's son, who were staying with Dynes temporarily. Dynes's friend Trevor Newbauer also was there visiting. Dynes and Newbauer were sitting in the living room, and Trittschuh and two other male friends[1] were in Trittschuh's bedroom,[2] when Sheeders knocked on Dynes's front door. Dynes had met Sheeders once before and knew that he was a friend of Newbauer's. Dynes, Newbauer, and Sheeders then sat in the living room talking and smoking cigarettes until Newbauer left. Thereafter, Sheeders "went outside and met with

---

[1] The police report indicates that Trittschuh and the two men "declined to fill out statements," and none of them testified at trial.

[2] Dynes did not mention that Trittschuh's son also was present during this incident, but Officer Hardy testified that "there was a small child" in the spare bedroom with Trittschuh when police officers arrived. (Trial Tr., p. 31.)

someone." (Trial Tr., p. 8.)

{¶ 4} According to Dynes, when Sheeders re-entered her home, "it was like he had just snapped." (*Id.*, p. 9.) Dynes elaborated: "His eyes were real big. He seemed to have a real nasty attitude. He just didn't seem like a stable person * * * He just seemed real jittery. Not like a normal person would act. * * * Violent." (*Id.*, p. 10.)

{¶ 5} Dynes testified that Sheeders "began swinging * * * around" a black-handled knife that Dynes recognized as one from a set in her kitchen. (*Id.*, pp. 10-11.) She said that Sheeders told everyone in the house to give him their cell phones. Keeping Dynes in her bedroom and Trittschuh and her two friends in the other bedroom, Sheeders was "pacing back and forth" between the two bedrooms. (*Id.*, p. 14.) Dynes testified that Sheeders continued to wave the knife while pacing, "telling us to stay put, nobody was leaving. If we did, he'd kill us." (*Id.)* According to Dynes, during this time, Sheeders "beat [Trittschuh] in the ribs", threw Dynes onto her bed, causing "a very big mark on my stomach", and punched one of Trittschuh's male friends in the face. (*Id.*, pp. 13, 15.)

{¶ 6} Dynes further testified: "I never felt that I was free to leave. * * * I thought I was going to die. * * * [Sheeders] was acting very violent swinging a knife around. I was afraid I was going to get stabbed with the knife or cut. I wasn't for sure what was going to happen. * * * I thought he was going to cause all of us harm. * * * [H]e was meaning to do something to someone. * * * From the minute I saw him with the knife to the minute that the cops got there and found the knife, I was afraid." (*Id.*, pp. 15-16.)

{¶ 7} Dynes said that although Sheeders had taken her main cell phone, she had another cell phone in a drawer in her bedroom that she was able to use to call 911 when Sheeders was not looking. When the police arrived, Dynes felt that it was safe to move

into the living room, where she waved to the police to enter the house. Dynes testified that after the police placed Sheeders in handcuffs, they found the black-handled knife on the table of a floor lamp in the living room.

**{¶ 8}** On cross-examination, Dynes admitted that the written statement she prepared for the police on the date of the incident did not indicate that Sheeders threatened anyone with the knife. On re-direct, she explained that she was not able to see Sheeders threaten anyone else while she was confined to her bedroom, and she failed to realize that she should write down that she personally was threatened. Dynes said that she did not see Sheeders place the knife on the lamp table where she said it was found, but she was "most definite" that the knife introduced at trial was "the knife that he was waving around." (*Id.*, p. 25.)

**{¶ 9}** Officer Hardy testified that he was dispatched to Dynes's residence on December 9, 2018, in response to a call about "a subject with [a] weapon." (*Id.*, p. 29.) Officer Hardy said that two other officers arrived at Dynes's home at about the same time. As he approached the house, Officer Hardy "could hear yelling" (*id.*) and saw Sheeders and Dynes arguing in the living room; Dynes waved the officers inside. Dynes "was yelling that he had a knife and was waving it around." (*Id.*, p. 31.) Officer Hardy could see Trittschuh, a small child, and two other men in the spare bedroom; one of the men was "highly upset" and "crouched down on the floor," "kind of in a ball position." (*Id.*, pp. 31-32.)

**{¶ 10}** The officers advised Sheeders "to calm down [and] explain what happened." (*Id.*, p. 32.) Because Sheeders was "highly agitated" and kept reaching into his pockets, another officer detained but did not arrest him. (*Id.*, p. 33.) Asked by Officer Hardy about

the location of the knife, Dynes pointed out a knife on the stove in the kitchen. Another officer took possession of the knife. Officer Hardy said that Dynes, in her testimony, was incorrect about where the knife was found. The knife was not dusted for fingerprints or tested for DNA.

{¶ 11} Defense counsel asserted a chain of custody objection to the admission of the knife into evidence, but the trial court overruled that objection. Defense counsel also moved for acquittal pursuant to Crim.R. 29, arguing that the evidence failed to establish proper venue. The court took that issue under advisement. On January 9, 2019, the trial court issued a judgment entry finding Sheeders guilty of both offenses.

{¶ 12} On January 14, 2019, Sheeders appeared by video for sentencing. (Sentencing Tr., p. 5.) As to the aggravated menacing offense, the trial court ordered a $250 fine and a 180-day jail sentence with credit for two days served, for a remaining sentence of 178 days. On the unlawful restraint offense, the court imposed an additional $150 fine and court costs, together with a 60-day jail sentence and two days' credit, with the remaining 58 days to be served concurrently with Sheeders's aggravated menacing sentence. (*Id.*, p. 5.) On the same date, the trial court issued a nunc pro tunc amended judgment entry, finding Sheeders guilty of both offenses "[b]ased upon the credibility of the witnesses," and sentencing him in accordance with the record at the sentencing hearing. (Doc. #12.)

{¶ 13} Sheeders appeals from that judgment, setting forth five assignments of error:

1) The trial court erred in convicting [Sheeders] of aggravating menacing against the manifest weight of the evidence and testimony presented at trial.

2) The trial court erred in convicting [Sheeders] of unlawful restraint against the manifest weight of the evidence and testimony presented at trial.

3) The trial court erred in finding that the State had proven beyond a reasonable doubt every element of the charge of aggravating menacing.

4) The trial court erred in finding that the State had proven beyond a reasonable doubt every element of the charge of unlawful restraint.

5) The trial court erred in overruling the defense's objections to admission of * * * Exhibit 1 in light of the State's failure to authenticate the exhibit through first-hand testimony of the exhibit's chain of custody, in accordance with Ohio Evidence Rule 901.

{¶ 14} We will consider those assignments in the order most conducive to our analysis.

**Assignment of Error # 5 – Chain of Custody**

{¶ 15} In his fifth assignment of error, Sheeders contends that the trial court erred by admitting into evidence, over Sheeders's objection, the knife presented as a prosecution exhibit. Sheeders asserts that because the State failed to present the testimony of the police officer who took possession of that knife at the crime scene, the "chain of custody" was not established, and the knife was not properly authenticated for evidentiary purposes.

*a. Standard of Review*

{¶ 16} We review trial court decisions related to the admission of evidence for an abuse of discretion. *State v. Glenn*, 2d Dist. Montgomery No. 27639, 2018-Ohio-2326, ¶ 20, citing *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 116;

*State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary," which "includes a situation in which a trial court did not engage in a 'sound reasoning process.' " (Citations omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Id.*

{¶ 17} In addition, appellate courts "give further deference to a judge's [admission of evidence] decision when the evidence is introduced in a bench trial." *State Cty. Park Dist. v. Dickerhoof*, 2018-Ohio-4319, 122 N.E.3d 608, ¶ 49 (5th Dist.), citing *State v. Fautenberry*, 72 Ohio St.3d 435, 439, 650 N.E.2d 878 (1995). "Unless the record indicates otherwise, the judge is presumed to have considered only admissible evidence." *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, ¶ 27 (8th Dist.).

b. *Law Regarding Chain of Custody*

{¶ 18} Evid.R. 901(A) requires "authentication or identification as a condition precedent to admissibility." "Authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *State v. Brock*, 2d Dist. Montgomery No. 19291, 2002-Ohio-7292, ¶ 48, citing Evid.R. 901(A). "As a general matter, 'the state [is] not required to prove a perfect, unbroken chain of custody.' " *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 57, quoting *State v. Keene*, 81 Ohio St.3d 646, 662, 693 N.E.2d 246 (1998). " 'A strict chain of custody is not always required in order for physical evidence to be admissible.' " *Id.,* quoting *State v. Wilkins,* 64 Ohio St.2d 382, 389, 415 N.E.2d 303 (1980). Arguments regarding chain of

custody generally "go to the *weight* to be afforded the evidence, not to the *admission* of the evidence." (Emphasis sic.) *Id.,* citing *State v. Richey*, 64 Ohio St.3d 353, 360, 595 N.E.2d 915 (1992), *overruled on other grounds*, *State v. McGuire*, 80 Ohio St.3d 390, 402-404, 686 N.E.2d 1112 (1997).

{¶ 19} Where one individual involved in the chain of custody of an item of physical evidence did not testify at trial, but the person who originally took possession of that item identified the trial exhibit "as fitting the description and features of the one he took from" the crime scene, we have upheld the admission of that evidence. *See Brock* at ¶ 3, 44-49.

### c. Sheeders's Chain of Custody Challenge

{¶ 20} The trial court did not abuse its discretion in deciding to admit the knife into evidence, despite Sheeders's objection. At trial, Dynes positively identified the knife introduced by the prosecution as "a kitchen knife from my kitchen that was [part of] a set that my grandmother had given me." (Trial Tr., p. 11.) Asked if it was "the exact knife" Sheeders used on December 9, 2018, Dynes initially equivocated: "I know if it wasn't that exact one, it was very, very similar. It had a black handle and it was a very long blade like that, yes." (*Id.)* Later, however, Dynes expressed greater certainty:

I have several knives. It was a set of knives that was bought for me from my grandmother. I know that I have several big knives like that that are in my kitchen. Some of them have skinnier blades on them than others. But I'm most definite that that is the knife that [Sheeders] was waving around, yes.

(*Id.*, p. 25.)

{¶ 21} When asked whether it was "possible that it could have been another knife,"

Dynes replied, "No." (*Id.*) Further, when Officer Hardy was questioned about the knife presented into evidence at trial, he stated, "That is the black handled silver blade knife that Miss Dynes advised Mr. Sheeders had." (*Id.*, p. 34.)

{¶ 22} Given the testimony of two witnesses identifying the knife as the one used by Sheeders, the trial court did not err by admitting that knife into evidence despite the lack of chain-of-custody testimony from the police officer who transported the knife to the police department. Dynes was particularly familiar with that knife because it belonged to a set that had been given to her by her grandmother; it was not a previously unknown weapon that she glimpsed only in the course of a traumatic event.

{¶ 23} Additionally, identification of a specific knife was not a critical element of the prosecution's case. The knife was not being used to tie Sheeders to the crime through fingerprints or DNA evidence. Although presentation of the knife arguably buttressed Dynes's testimony that she believed Sheeders would cause her serious physical harm, proof of that element would not have required that the exact knife Sheeders used actually be presented into evidence.

{¶ 24} Finally, the trial court's decision does not disclose how much weight, if any, the court accorded the evidence of the knife that Sheeders purportedly used. Absent any indication to the contrary in the record, we presume that the trial court considered only proper evidence. *See Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, at ¶ 27. Even if we were to believe that the knife was admitted improperly (which we do not), there is no reason to conclude that such admission improperly influenced the trial court's decision.

{¶ 25} Sheeders's fifth assignment of error is overruled.

**Assignments of Error #1, 3 –Aggravated Menacing Conviction**

{¶ 26} Sheeders's first assignment of error maintains that his conviction of aggravated menacing was against the manifest weight of the evidence, while his third assignment of error challenges the sufficiency of the evidence to sustain that same conviction.

*a. Standards of Review*

{¶ 27} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 28} In contrast, when reviewing an argument challenging the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

*b. Law Regarding Offense of Aggravated Menacing*

**{¶ 29}** The aggravated menacing statute provides in pertinent part as follows:

(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person * * *.

(B) Whoever violates this section is guilty of aggravated menacing. Except as otherwise provided in this division, aggravated menacing is a misdemeanor of the first degree.

* * *

R.C. 2903.21.

**{¶ 30}** To establish a violation of that statute, the State must prove beyond a reasonable doubt three elements: that the defendant "(1) knowingly, (2) caused another to believe, (3) that the offender will cause serious physical harm to the person or property of such other person * * *." *Dayton v. Gitwein*, 2d Dist. No. 11935, 1990 WL 157171, *2 (Oct. 11, 1990), citing R.C. 2903.21. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶ 31}** "Serious physical harm to persons" as used in R.C. 2903.21 is defined to include:

* * *

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5); *see also State v. Davis*, 2d Dist. Montgomery No. 26399, 2015-Ohio-2965, ¶ 5.

{¶ 32} To be punishable under R.C. 2903.21, "the threat need only be one that causes the victim to believe that the offender will cause serious physical harm." *Gitwein* at *2, quoting *Columbus v. James*, 10th Dist. Franklin No. 87-AP-1218, 1988 WL 96240 (Sept. 15, 1988). "Whether a threat sufficient to support a charge of aggravated menacing has been made is a question of fact and one to be determined by the trier of fact." *State v. Hancock*, 2d Dist. Montgomery No. 20738, 2005-Ohio-5785, quoting *Dayton v. Dunnigan*, 103 Ohio App.3d 67, 71, 658 N.E.2d 806 (2d Dist.1995).

*c. Assignment #3 – Insufficient Evidence*

{¶ 33} The evidence presented at Sheeders's bench trial, when viewed in a light most favorable to the State, was sufficient to persuade a reasonable trier of fact that the essential elements of aggravated menacing had been proven beyond a reasonable doubt. Dynes testified that Sheeders was "waving" a kitchen knife with "a very long blade" while verbally threatening to "kill" those present in Dynes's home. She further testified that Sheeders threw Dynes onto her bed, struck Trittschuh in the ribs, and punched one man in the face, indicative of Sheeders's willingness to use force. Dynes said that throughout the episode, she was "afraid I was going to get stabbed with the knife or cut." Such

evidence was adequate to demonstrate that Sheeders acted knowingly in causing Dynes to believe that Sheeders would cause her serious physical harm.

{¶ 34} Sheeders's third assignment of error is overruled.

*d. Assignment #1 – Contrary to Manifest Weight of Evidence*

{¶ 35} We likewise conclude that Sheeders's aggravated menacing conviction was not contrary to the manifest weight of the evidence. Sheeders did not testify or call any witnesses on his behalf. The only evidence he presented at trial was a copy of Dynes's written statement to police, which defense counsel used in cross-examining Dynes about her failure to mention Sheeders's alleged threats or use of force against Dynes or others present. In its amended final judgment entry, the trial court expressly stated that it found the witnesses' testimony to be credible. The trial court was entitled to accept Dynes's explanation of that omission following what she termed a "very traumatic" experience. (*See* Trial Tr., pp. 23-24.) The record does not support a conclusion that the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 36} We are not dissuaded from that conclusion by Sheeders's observation that Dynes's testimony differed from that of Officer Hardy. Discrepancies as to whether the knife was found in the kitchen or in the living room after Sheeders was detained do not refute Dynes's testimony that Sheeders made threats and wielded a knife in a threatening manner.

{¶ 37} Finally, Dynes's presence in the living room with Sheeders when the police arrived does not preclude a finding that Dynes feared Sheeders would cause her serious

physical harm. Dynes testified that she felt safe enough to enter the living room once she knew that the police were on site. Assessing the credible of her testimony was the province of the trial court, and the trial court did not err by finding Sheeders guilty of aggravated menacing.

**{¶ 38}** Sheeders's first assignment of error is overruled.

### Assignments of Error #2, 4 – Unlawful Restraint Conviction

**{¶ 39}** Sheeders's second and fourth assignments of error essentially mirror as to his unlawful restraint conviction the arguments advanced in his first and third assignments of error addressed to his aggravated menacing conviction – i.e., that the conviction was both against the manifest weight of the evidence and supported by insufficient evidence. We apply the same standards of review to these arguments.

*a. Law Regarding Offense of Unlawful Restraint*

**{¶ 40}** The unlawful restraint statute provides in part:

(A) No person, without privilege to do so, shall knowingly restrain another of the other person's liberty.

* * *

(C) Whoever violates this section is guilty of unlawful restraint, a misdemeanor of the third degree.

* * *

R.C. 2905.03. The definition of "knowingly" is the same as for aggravated menacing under R.C. 2903.21. *See* R.C. 2901.22(B).

**{¶ 41}** We previously have held that the act of brandishing a knife to maintain control over another person constitutes a form of unlawful restraint. *See State v. Smith,*

2d Dist. Montgomery No. 24402, 2012-Ohio-734, ¶ 20, 23-24. Additionally, restraining another's liberty by forcing her to stay in a location against her will amounts to unlawful restraint. *See State v. Rohm*, 2d Dist. Greene No. 2009 CA 19, 2010-Ohio-1240, ¶ 13-14.

*b.  Assignment #4 – Insufficient Evidence*

**{¶ 42}** Here, Dynes's testimony, if believed, was sufficient to establish beyond a reasonable doubt all elements of the offense of unlawful restraint. Dynes testified that Sheeders kept her confined to her bedroom by throwing her onto her bed, taking her cell phone, brandishing a knife, and issuing verbal threats to prevent her from leaving.

**{¶ 43}** Sheeders's fourth assignment of error is overruled.

*c.  Assignment # 2 – Contrary to Manifest Weight of Evidence*

**{¶ 44}** Likewise, the record does not support a conclusion that, in finding Sheeders guilty of unlawful restraint, the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Sheeders's argument is premised entirely on his contention that his conviction was based on Dynes's testimony, which lacked credibility. The trial court determined otherwise, and the record supports a conclusion that the trial court did not lose its way.

**{¶ 45}** Sheeders's second assignment of error is overruled.

**Conclusion**

**{¶ 46}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies sent to:

Chance O. Cox
V. Gayle Miller
Hon. Julie L. Monnin