[Cite as *State v. Ranta*, 2024-Ohio-3213.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29974 |
| | : | |
| v. | : | Trial Court Case No. 23CRB00869 |
| | : | |
| KYLE J. RANTA | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 23, 2024

. . . . . . . . . . .

JOHN C. CUNNINGHAM, Attorney for Appellant

NOLAN C. THOMAS, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Defendant-Appellant Kyle J. Ranta appeals from his conviction for aggravated menacing. For the reasons outlined below, we affirm the judgment of the trial court.

**I.      Factual Background and Procedural History**

{¶ 2} On July 11, 2023, Ranta was charged in the Kettering Municipal Court with one count of aggravated menacing in violation of R.C. 2903.21, a misdemeanor of the first degree. The charge against Ranta stemmed from an incident at his residence on the morning of July 10, 2023.

{¶ 3} The parties agreed on the following facts. On the morning in question, Ranta's wife, Erin, called her mother, Mary Lou, requesting that her mother bring Erin's spare car key to her house. Shortly thereafter, Mary and John, Mary's husband and Erin's father, drove to Erin's house to deliver the key. When they arrived, Erin, who was running late for work, was already outside of the house waiting for the key.

{¶ 4} At this point, however, Mary's and John's versions of the events diverged from those of Ranta and Erin. According to Mary and John, when they arrived at the house, Ranta, appearing angry and upset, "came barreling out of the front door yelling and screaming" unflattering statements about Erin and criticizing John's parenting of Erin. He then banged his head against the front door, walked down the front porch, entered the garage, and emerged with hammers in his hands. When Ranta emerged from the garage, he started walking toward Mary with the hammers, flailing his arms and screaming in a manner that Mary and John perceived as threatening toward Mary. Mary was shocked and believed that Ranta was going to hit her with the hammers. John testified that Ranta "went at" Mary, causing John to believe that Ranta was going to hurt her, and John then phoned the police. At some point, Ranta placed the tools on a trashcan and ripped off his shirt, saying "That's what a real man looks like." Upon realizing that John was speaking to the police, Ranta returned the hammers to the garage before the

police arrived and arrested him.

{¶ 5} Ranta and Erin provided versions of events different from Mary's and John's. According to their trial testimony, Ranta emerged from the garage holding an axe and a hammer (rather than two hammers) across his chest in a defensive position directed only at John but, shortly thereafter, placed the hammers on the trashcan. Ranta testified that he initially felt threatened by John because John stepped out of his car in response to Ranta's statements about him and Erin and said, "That's it."

{¶ 6} After considering the testimony and demeanor of the witnesses, the trial court found Ranta guilty as charged. Ranta appeals.

## II.     Assignments of Error

{¶ 7} Ranta asserts the following two assignments of error:

Appellant's conviction for aggravated menacing under R.C. 2903.21 was against the manifest weight of the evidence.

Appellant's conviction for aggravated menacing under R.C. 2903.21 was based on insufficient evidence.

{¶ 8} Ranta was charged with aggravated menacing under R.C. 2903.21, which states, in part:

(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person . . .

(B) Whoever violates this section is guilty of aggravated menacing. Except as otherwise provided in this division, aggravated menacing is a

misdemeanor of the first degree. . .

{¶ 9} To establish a violation of R.C. 2903.21, "the State must prove, beyond a reasonable doubt, that the offender '(1) knowingly, (2) caused another to believe, (3) that the offender will cause serious physical harm to the person or property of such other person . . .' " *Dayton v. Gitwein*, 1990 WL 157171, *2 (2d Dist. Oct. 11, 1990), citing R.C. 2903.21. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." *State v. Sheeders*, 2019-Ohio-3120, ¶ 30 (2d Dist.), citing R.C. 2901.22(B).

{¶ 10} "Serious physical harm to persons" is defined by R.C. 2901.01(A)(5) to include:

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

*Sheeders* at ¶ 31, citing R.C. 2901.01(A)(5); *see also State v. Davis*, 2015-Ohio-2965, ¶ 5 (2d Dist.).

{¶ 11} "To be punishable under R.C. 2903.21, 'the threat need only be one that causes the victim to believe that the offender will cause serious physical harm.' " *Sheeders* at ¶ 32, citing *Gitwein* at \*2, quoting *Columbus v. James*, 1988 WL 96240 (10th Dist. Sept. 15, 1988). "Whether a threat sufficient to support a charge of aggravated menacing has been made is a question of fact and one to be determined by the trier of fact." *Id.*, quoting *State v. Hancock*, 2005-Ohio-5785, ¶ 16 (2d Dist.), quoting *Dayton v. Dunnigan*, 103 Ohio App.3d 67, 71 (2d Dist. 1995).

{¶ 12} On appeal, Ranta first contends that his conviction for aggravated menacing was not supported by the manifest weight of the evidence. Ranta claims that there was no threat of violence and no credible evidence that Ranta knowingly caused either Mary or John to believe he would cause either of them serious physical harm. Ranta asserts that John should have known that his actions were defensive and only directed toward John, not Mary. Ranta further argues that Mary's and John's testimony differed as to how long Ranta was waiving the tools and that Mary's testimony, in general, contradicted itself and lacked credibility. Second, Ranta contends that there was insufficient evidence that he had the requisite intent for aggravated menacing. We will consider Ranta's assignments of error together.

{¶ 13} A sufficiency of the evidence argument relates to whether the State "presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380 (1997). "The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to

the State, could have found the essential elements of the crime proven beyond a reasonable doubt." *Sheeders* at ¶ 27, citing *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). "A guilty verdict will not be disturbed on appeal unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' " *Id.* In other words, on review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Thompkins* at 390.

{¶ 14} A weight of the evidence argument, on the other hand, challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *Wilson* at ¶ 12, citing *State v. Hufnagel*, 1996 WL 501470 (2d Dist. Sept. 6, 1996). "[W]hen reviewing an argument challenging the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Sheeders* at ¶ 28, citing *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 15} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. Flores-Lopez*, 2017-Ohio-690, ¶ 49 (2d Dist.), citing *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.); a*ccord State v. Robinson*, 2015-Ohio-

1167, ¶ 17 (2d Dist.). As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.*, citing *State v. Braxton*, 2005-Ohio-2198, ¶ 15 (10th Dist.).

{¶ 16} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts primarily to resolve." *Wilson* at ¶ 15, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967). In *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug. 22, 1997), we explained:

> Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

*Id.* at *4. Thus, we will not substitute our judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *See Wilson* at ¶ 17, citing *State v. Bradley,* 1997 WL 691510 (2d Dist. Oct. 24, 1997).

{¶ 17} In Ranta's case, the witnesses presented differing accounts of what had happened, which required the trial judge to determine which account was more credible. We will not disturb the determination made by the trier of the fact in assessing witnesses and conflicting testimony unless it is so incredible that it defies belief. *State v. Morgan*,

2002-Ohio-3567, *1 (2d Dist.).

{¶ 18} This is not a circumstance in which the accounts of the witnesses credited by the trial court were so incredible as to defy belief. Mary and John testified that Ranta had appeared angry and upset, yelled and screamed, emerged from the garage carrying two tools that appeared to be hammers, and then flailed his arms, walked toward Mary, and screamed in way that Mary and John perceived to be threatening toward Mary. Mary testified that she was shocked and believed that Ranta was going to hit her with the hammers. John also testified that Ranta "went at" Mary, causing John to believe that Ranta was going to hurt her, so John phoned the police. The trial court found Mary and John to be credible and convicted Ranta for aggravated menacing on the basis of their testimony.

{¶ 19} Based on Ranta's and Erin's opposing testimony, Ranta asserts that John should have known that Ranta's actions were defensive in nature and directed only toward John. Ranta further argues that Mary's and John's testimony differed as to how long Ranta was waiving the tools and that Mary's testimony in particular contradicted itself and lacked credibility. However, their credibility and the weight to be given to their testimony were matters for the trial court to resolve, and we will not substitute our judgment for that of the trial court on the issue of witness credibility. The record does not support a conclusion that the trial court lost its way in arriving at its verdict and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thus, we conclude that Ranta's aggravated menacing conviction was not against the manifest weight of the evidence.

{¶ 20} Our determination that Ranta's conviction was supported by the weight of the evidence is dispositive of the issue of sufficiency. However, we also conclude that the evidence presented, when viewed in a light most favorable to the State, was sufficient to demonstrate that Ranta acted knowingly in causing Mary to believe that Ranta would cause her serious physical harm by walking toward her while carrying an axe and a hammer in each hand, yelling angrily, and flailing his arms. A reasonable trier of fact could have concluded that the elements of aggravated menacing had been proven beyond a reasonable doubt.

{¶ 21} Ranta's two assignments of error are overruled.

### III. Conclusion

{¶ 22} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .


WELBAUM, J. and TUCKER, J., concur.