[Cite as *State v. Sawitke*, 2025-Ohio-1089.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30179 |
| | : | |
| v. | : | Trial Court Case No. 2023-CRB-1320 |
| | : | |
| JUSTIN SAWITKE | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 28, 2025

. . . . . . . . . . .

COLIN P. COCHRAN, Attorney for Appellant

STEPHANIE L. COOK, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Defendant-Appellant Justin Sawitke appeals from his conviction for loitering to engage in solicitation.  He contends that his conviction was based on insufficient evidence and was against the manifest weight of the evidence. He points out that only he

and the decoy police officer testified regarding the facts giving rise to his arrest, and he asserts that the officer's testimony was not credible because she had poor recollection of their interaction. However, the officer's testimony was sufficient to demonstrate the elements of loitering to engage in solicitation and, because the credibility and the weight to be given to the testimony of each witness were matters for the jury to resolve, we will not substitute our judgment for that of the jury on the issue of witness credibility. For these reasons, we affirm the judgment of the trial court.

## I.      Background Facts and Procedural History

{¶ 2} In April 2023, several Dayton Police Department detectives conducted a street-level decoy prostitution operation at North Main Street and Mumma Avenue in Dayton, which is a high prostitution area. At the time of her interaction with Sawitke, Officer McDonald, an undercover decoy prostitute dressed in plain clothes and equipped with a hidden recording device, was standing on Mumma Avenue and observed a Honda CRV driven by Sawitke come out of an alleyway. Shortly after she spotted Sawitke in his vehicle, they had a verbal interaction that resulted in the following charges against Sawitke: one count of loitering to engage in solicitation in violation of R.C. 2907.241(A)(2), a misdemeanor of the third degree; one count of soliciting in violation of R.C. 2907.24(A), a misdemeanor of the third degree; and one count of engaging in prostitution in violation of R.C. 2907.231(B), a misdemeanor of the first degree. Sawitke entered a plea of not guilty. Just before trial, the State dismissed the charge of soliciting, and the matter proceeded to a jury trial on the remaining two counts.

{¶ 3} At trial, Detective Orick testified regarding the practice of street-level

prostitution decoy operations by the Dayton Police Department near high prostitution areas, which are in response to prostitution complaints. He explained that decoy officers are trained to be sting operatives in environments where people are seeking out prostitutes. During those operations, decoy officers look for individuals driving through alleys when there is no reason to do so, as that activity is suggestive of persons looking for prostitutes. Orick was on surveillance when Sawitke was arrested and received the signal from Officer McDonald that Sawitke had engaged in a conversation seeking sex from her.

{¶ 4} Officer McDonald also testified. According to Officer McDonald, as Sawitke approached her in the alleyway, she walked toward him; he made eye contact with her and moved his belongings to the back of the vehicle. He stopped his vehicle approximately 30 feet from a stop sign, which made him less visible to marked cruisers traveling on bigger thoroughfares. When McDonald approached Sawitke's vehicle, he rolled down the passenger side window and unlocked the door. He then greeted her and asked her if she wanted to get in the vehicle; she asked him what he wanted. He indicated that he wanted "head," or oral sex, from her, and she offered to do it for ten dollars. He asked her if she was a police officer (a common question by "Johns" seeking sex from a prostitute), which she denied. He then agreed to pay her ten dollars. She told him that she had to retrieve her bags and suggested that he make a loop around the block to give her time to gather her things. Once he left, she signaled to other officers standing by that an agreement had been reached between them, and then she walked in the opposite direction. Sawitke drove away and was arrested shortly thereafter. Officer McDonald's

recording device failed to properly record their conversation, and she could not recall certain aspects of their interaction, including their exact conversation and the color of Sawitke's vehicle.

{¶ 5} Sawitke testified on his own behalf. According to him, he was driving a beige Honda CRV to his mother's house with his two small children in the backseat. Upon seeing Officer McDonald on the side of the road, he pulled over to ask her if she needed a ride. He told her the direction that he was "headed." When she offered him ten dollars, he thought her cash offer was odd but assumed that she intended to pay for a ride. He then asked her if she was a police officer because he thought their interaction was peculiar, and he was not trying to pick up prostitute. He testified that he often assisted people on the side of the road, offering rides or cash to those in need. According to Sawitke, McDonald told him that she needed to pick up her belongings in the alleyway before getting in his vehicle, and he decided to leave without saying anything further. The police then trailed him, and he was arrested.

{¶ 6} The jury found Sawitke guilty of loitering to engage in solicitation and not guilty of engaging in prostitution, and the trial court referred the matter for a presentence investigation. Sawitke was sentenced to 60 days in jail, plus courts costs. He timely appealed.

## II. Assignments of Error

{¶ 7} On appeal, Sawitke asserts the following two assignments of error:

APPELLANT'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW.

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} Sawitke contends that the jury's verdict finding him guilty of loitering to engage in solicitation was based on insufficient evidence that he acted purposefully. He argues that Officer McDonald's recollection of the events was poor, as evidenced by her testimony. He asserts that, because her recording device did not provide a proper recording of their conversation, the only credible evidence regarding his intent came from his own testimony, in which he specifically stated that he never attempted to engage in solicitation, and not from the unreliable testimony of Officer McDonald. He further argues that the jury clearly lost its way in believing Officer McDonald's minimal uncertain recollection of their interaction.

{¶ 9} Sawitke was found guilty of loitering to engage in solicitation under R.C. 2907.241(A)(2), which states:

(A) No person, with purpose to solicit another to engage in sexual activity for hire and while in or near a public place, shall do any of the following:

. . .

(2) Engage or attempt to engage another in conversation;

"Purposely" is a culpable mental stated defined under R.C. 2901.22(A) as:

A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in

conduct of that nature.

{¶ 10} A sufficiency of the evidence argument relates to a dispute concerning whether the State "presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380 (1997). "The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Sheeders*, 2019-Ohio-3120, ¶ 27, citing *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). "A guilty verdict will not be disturbed on appeal unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' " *Id.* In other words, on review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Thompkins* at 390.

{¶ 11} A weight of the evidence argument, on the other hand, challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *Wilson* at ¶ 12, citing *State v. Hufnagel*, 1996 WL 501470 (2d Dist. Sept. 6, 1996). "[W]hen reviewing an argument challenging the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Sheeders* at ¶ 28, citing *Thompkins* at 387, quoting

*State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 12} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. Flores-Lopez*, 2017-Ohio-690, ¶ 49 (2d Dist.), citing *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.); *accord State v. Robinson*, 2015-Ohio-1167, ¶ 17 (2d Dist.). As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.*, citing *State v. Braxton*, 2005-Ohio-2198, ¶ 15 (10th Dist.).

{¶ 13} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts primarily to resolve." *Wilson* at ¶ 15, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967). In *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug. 22, 1997), we explained:

Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

Thus, we will not substitute our judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its

verdict. *See Wilson* at ¶ 17, citing *State v. Bradley,* 1997 WL 691510 (2d Dist. Oct. 24, 1997).

**{¶ 14}** We observe that, although this court considers the credibility of witnesses in reviewing the record, we accord due deference to the trier of fact. The jury had the opportunity to view the witnesses' testimony and adjudge their credibility. The trier of fact, viewing the record as a whole, could have found that Officer McDonald's testimony was credible. As acknowledged by Sawitke, in this case, the jury was forced to choose between two conflicting sets of testimony, and he believes that his testimony was more credible. However, "[w]e will not disturb the choice made by the trier of the facts between witnesses and conflicting testimony unless it is so incredible that it defies belief . . . ." *State v. Morgan*, 2002-Ohio-3567, *1 (2d Dist.).

**{¶ 15}** We do not find Officer McDonald's testimony to be that incredible. She was standing on the side of the road in an alleyway in a high prostitution area when Sawitke approached her in his vehicle. While she was uncertain of the color of Sawitke's Honda CRV and could not recall specific aspects of their conversation, she judged the situation as one in which Sawitke sought to engage in solicitation based on the totality of their interaction. She testified that he slowly drove toward her but stopped his vehicle approximately 30 feet from the stop sign at the corner, making him less visible to marked cruisers traveling on bigger thoroughfares. While doing so, he made eye contact with her and moved his belongings to the back of the vehicle, presumably to engage her attention and make room for her in the vehicle. When she approached his vehicle, he rolled down the passenger side window and unlocked the door. He greeted her, asking her if she

wanted to get in the vehicle, and she asked him what he wanted. He indicated that he wanted "head," or oral sex, from her. When she offered to do it for ten dollars, he asked her if she was a police officer, which was a common question by men seeking sex from a prostitute. She denied that she was a police officer, and he agreed to pay her ten dollars before apparently changing his mind and driving away. Under these circumstances, reasonable minds could have concluded that Sawitke did not just happen to drive out of his way down an alley in a high prostitution area to engage in a conversation with a stranger for the purpose of offering her a ride with his young children in the backseat, but rather he did so with the purpose of soliciting Officer McDonald to engage in sexual activity for hire.

{¶ 16} Although Sawitke recounted a different version of their interaction, the credibility and the weight to be given to their testimony were matters for the jury to resolve, and we will not substitute our judgment for that of the jury on the issue of witness credibility. The record does not support a conclusion that the jury lost its way at arriving at its verdict and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. After examining the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find that Sawitke's conviction for loitering to engage in solicitation was not against the manifest weight of the evidence.

{¶ 17} Our determination that Sawitke's conviction was supported by the weight of the evidence is dispositive of the issue of sufficiency. However, we also conclude that the evidence presented, when viewed in a light most favorable to the State, was sufficient to

demonstrate that Sawitke acted purposely in engaging another (Officer McDonald) in a conversation to solicit sexual activity for hire while in a public place. This was enough to persuade a reasonable trier of fact that the elements of loitering to engage in solicitation had been proven beyond a reasonable doubt.

**{¶ 18}** Sawitke's two assignments of error are overruled.

### III. Conclusion

**{¶ 19}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.